John Lukjanowicz
Jonathan A. DeMella
Oles Morrison Rinker & Baker LLP
701 Pike Street, Suite 1700
Seattle, WA  98101-3939
Tel: (206) 623-3427
Fax: (206) 682-6234
lukjanowicz@oles.com
demella@oles.com

Attorneys for Defendant
Bering Sea Eccotech, Inc.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| NORTH AMERICAN MARINE TRANSPORTATION LLC,<br><br>          Plaintiff,<br><br>     v.<br><br>BERING SEA ECCOTECH, INC.,<br><br>          Defendant. | Case No. 3:06-CV-00110 TMB |

**MEMORANDUM IN SUPPORT OF BERING SEA ECCOTECH'S
MOTION FOR PARTIAL SUMMARY JUDGMENT
AGAINST NORTH AMERICAN MARINE TRANSPORTATION LLC**

Pursuant to Federal Rule of Civil Procedure 56, Defendant Bering Sea Eccotech, Inc. ("BSE") respectfully moves for partial summary judgment on the Breach of Contract cause of action alleged by Plaintiff North American Marine Transportation LLC ("NAMT") in its Complaint filed with the Court on May 11, 2006.  As BSE demonstrates in this Memorandum,

MEMORANDUM IN SUPPORT OF BERING SEA ECCOTECH INC.'S
MOTION FOR PARTIAL SUMMARY JUDGMENT
AGAINST NORTH AMERICAN MARINE TRANSPORTATION LLC
NAMT v. BSE, Case No. 3:06-CV-00110 TMB
Page 1 of 18
P-JL DEFS MEMO SUP MTN PTL SJ 083007 981380008

there is no genuine issue as to any material fact and BSE is entitled to partial summary judgment as a matter of law.

## I. INTRODUCTION

On December 6, 2004, the *M/V Selendang Ayu* experienced a failure in the main engine's No. 3 cylinder. As a result, the main engine of the vessel was either shut down or stopped. At the time of the engine failure, the *Selendang Ayu* was approximately 100 miles from Dutch Harbor and about 46 miles from the nearest point of land, Bogoslof Island.

Despite efforts to save the *M/V Selendang Ayu* over the next two days, the vessel drifted without power in a south-easterly direction toward the Unalaska Island coast. At approximately 7:00 p.m. on December 8, 2004 the *Selendang Ayu* broke in half on the rocks between Skan Bay and Spray Cape on the Unalaska coastline. The location where the vessel broke apart is approximately 25 miles by air or 50 miles by sea southwest of Dutch Harbor. The accident resulted in the release of approximately 336,000 gallons of fuel oil and diesel fuel that lead to an environmental cleanup effort lasting until June 2006.[1]

Gallagher Marine Systems ("Gallagher") was one of the primary responders heading up the clean-up efforts. Gallagher

---

[1] The foregoing information was found in the National Transportation Safety Board Report concerning the *M/V Selendang Ayu* accident, found at www.htsb.govpublictn/2006/MAB0601.pdf. BSE respectfully requests the Court exercise its discretion under Federal Rule of Evidence 201 to take judicial notice of this official report.

MEMORANDUM IN SUPPORT OF BERING SEA ECCOTECH INC.'S
MOTION FOR PARTIAL SUMMARY JUDGMENT
AGAINST NORTH AMERICAN MARINE TRANSPORTATION LLC
NAMT v. BSE, Case No. 3:06-CV-00110 TMB
Page 2 of 18
P-JL DEFS MEMO SUP MTN PTL SJ 083007 981380008

contracted with BSE to provide up to three vessels and several dozen hazardous clean-up workers commonly known as "hazwopers" to assist in the clean-up effort.[2]

On April 29, 2005, BSE entered into a Blanket Time Charter Agreement ("Agreement") with NAMT concerning the *M/V Freebird*. BSE was going to use the *Freebird* to "house" hazwopers near the oil spill site.

BSE paid NAMT the sum of $633,550 under the Agreement. NAMT asserted that BSE owed it an additional $256,450. On May 11, 2006, NAMT filed a complaint in this Court, alleging that BSE breached the Agreement by failing to pay the $256,450.00 NAMT claimed BSE owed it under the Agreement. NAMT recently revised its claimed damages for BSE's alleged breach of contract from $256,450 to $133,800.

BSE believes that the undisputed facts and relevant law will establish that: (1) the Agreement between BSE and NAMT required NAMT to provide a vessel certified by the United States Coast Guard for thirty (30) personnel; (2) NAMT has admitted that the *M/V Freebird* was not certified by the Coast Guard for 30 personnel until June 6, 2005; and (3) NAMT nevertheless claims that BSE continues to owe it the per diem charter rate of $11,150 for nine days ($100,350) involving three distinct time periods prior to June 6, 2005, as follows:

---

[2] The term "hazwoper" is frequently used to describe individuals engaged in "Hazardous Waste Operations and Energy Response." *See generally* 29 CFR § 1910.120 (2007).

MEMORANDUM IN SUPPORT OF BERING SEA ECCOTECH INC.'S
MOTION FOR PARTIAL SUMMARY JUDGMENT
AGAINST NORTH AMERICAN MARINE TRANSPORTATION LLC
NAMT v. BSE, Case No. 3:06-CV-00110 TMB
Page 3 of 18
P-JL DEFS MEMO SUP MTN PTL SJ 083007 981380008

- May 15 to May 21, 2005 (6 days or $66,900.00)
- May 22, 2005 (1 day or $11,150)
- June 3-4, 2005 (2 days or $22,300)

By means of this Motion, BSE seeks to establish that NAMT is not entitled to nine days of the daily charter rate of $11,150 dollars ($100,350 total) because, by its own admission, prior to June 6, 2005, NAMT failed to provide to BSE a USCG certified vessel for thirty (30) personnel. As a result, because there is no dispute about the relevant facts and the law, BSE is entitled to Partial Summary Judgment dismissing $100,350 of the $133,800 in damages NAMT seeks in this litigation.

## II.   STATEMENT OF FACTS

1. Effective April 29, 2005, BSE and North American entered into the Agreement. *See* Lukjanowicz Affidavit, Paragraph 2, Exhibit 1.

2. The Agreement contained the following Articles:

NOW, THEREFORE, the parties hereto enter into this Agreement under the terms of which OWNER [previously identified as NAMT] shall hire to CHARTERER [previously identified as BSE] and CHARTERER shall hire from OWNER vessels as may from time to time be requested by CHARTERER, and if said vessel(s) is (are) chartered, said vessel(s) shall be subject to all terms and provisions of this Agreement. The agreement of the parties to the charter of a specific vessel under the terms of this

MEMORANDUM IN SUPPORT OF BERING SEA ECCOTECH INC.'S
MOTION FOR PARTIAL SUMMARY JUDGMENT
AGAINST NORTH AMERICAN MARINE TRANSPORTATION LLC
NAMT v. BSE, Case No. 3:06-CV-00110 TMB
Page 4 of 18
P-JL DEFS MEMO SUP MTN PTL SJ 083007 981380008

Agreement shall be confirmed in writing in a "Confirmation of Hire" a form of which is attached hereto.

***

### Article 3 – Delivery and Vessel Condition

Vessel shall be delivered to CHARTERER at the time and place specified in the Confirmation of Hire. OWNER shall exercise due diligence to deliver and maintain the vessel in good running order and in a seaworthy condition. The vessel shall have and maintain valid Certificate of Inspection documentation as required by the United States Coast Guard, and shall maintain its classification with the American Bureau of Shipping. The crew shall at all times be licensed in accordance with U.S. Coast Guard and American Bureau of Shipping requirements.

***

### Article 5 – Use of Vessel

CHARTERER agrees to restrict the use of each vessel solely to its intended duty as a hotel vessel and related support for oil spill clean up personnel and to the lawful movement of its supplies, equipment and other materials and personnel incidental to its operations in inland and offshore waters. The whole of the vessel shall be at CHARTERER's disposal reserving proper and sufficient space for the vessel's master, officers, crew, tackle, apparel, furniture, equipment, stores and fuel.

MEMORANDUM IN SUPPORT OF BERING SEA ECCOTECH INC.'S
MOTION FOR PARTIAL SUMMARY JUDGMENT
AGAINST NORTH AMERICAN MARINE TRANSPORTATION LLC
NAMT v. BSE, Case No. 3:06-CV-00110 TMB
Page 5 of 18
P-JL DEFS MEMO SUP MTN PTL SJ 083007 981380008

***

**Article 18 – Law**

The Agreement shall be construed in accordance with the general maritime laws of the United States of America. Lukjanowicz Affidavit, Paragraph 2, Exhibit 1.

3. The "Confirmation of Hire" portion of the Agreement provided as follows:

CONFIRMATION OF HIRE

Pursuant to the terms of that certain Blanket Time Charter Agreement, dated APRIL 29, 2005 entered into by and between NORTH AMERICAN MARINE TRANSPORTATION, OWNER, and CHARTERER BERING SEA ECCOTECH, Inc. hereby agrees to Time Charter and CHARTERER hereby agrees to hire the vessel subject to the following:

| | |
|---|---|
| 1. Vessel, Official No., Class | #272162 USCG-OSV-ABS-LOADLINE CERT FOR 30 PERSONNEL R/V FREEBIRD |
| 2. Vessel Description | 140X36X10 |
| 3. Date of Delivery | 05-15-2005 |
| 4. Port of Delivery: | Dutch Harbor, Alaska |
| 5. Port of Redelivery: | Dutch Harbor, Alaska |
| 6. Area of Operation/Navigation Limits: | PACIFIC OCEAN 200 MILES FROM LAND |
| 7. Term of Charter: | 80 Days |
| 8. Daily Charter Rate: | $11,150. US |
| 9. Downtime Rate: | N/A |
| 10. Mobilization/Demobilization | $168,000 US (payable as $110,000 on mobilization and $58,000 on demobilization.) |
| 11. Option to Extend | YES |
| 12. CHARTERER AGREES TO PAY FOR FUEL, LUBE, WATER, ENGINE ROOM CONSUMABLES, provided proper receipts are provided. | |

Lukjanowicz Affidavit, Paragraph 2, Exhibit 1.

MEMORANDUM IN SUPPORT OF BERING SEA ECCOTECH INC.'S
MOTION FOR PARTIAL SUMMARY JUDGMENT
AGAINST NORTH AMERICAN MARINE TRANSPORTATION LLC
NAMT v. BSE, Case No. 3:06-CV-00110 TMB
Page 6 of 18
P-JL DEFS MEMO SUP MTN PTL SJ 083007 981380008

4. NAMT delivered the *M/V Freebird* to Dutch Harbor on May 15, 2005. Plaintiff's Complaint, ¶ 9; Answer, Affirmative Defenses and Counterclaim of Defendant, ¶ 9.

5. In its Complaint, NAMT asserted only one cause of action against BSE, for breach of contract. Plaintiff's Complaint, ¶¶ 13-16. Plaintiff claimed that the *Freebird* was under Charter to BSE for the eighty (80) day period from May 15, 2005 to August 3, 2005, at the per diem rate of $11,150 per day ($892,000 total), Plaintiff's Complaint, ¶¶ 13-14, but that BSE paid NAMT for only 57 days of charter hire at $11,150 per day ($635,550). *Id.* ¶ 15. NAMT therefore originally sought to recover the sum of $256,450 from BSE as damages for BSE's alleged breach of the Agreement. *Id.* ¶ 16.

6. BSE's Interrogatory No. 10 to NAMT, and NAMT's Answer, read as follows:

> INTERROGATORY N0. 10: With regard to NAMT's Claim, state or identify the following:
>
> (a) The exact amount of damages NAMT is seeking from BSE in this litigation;
>
> (b) The component parts and component amounts which comprise the figure identified in response to Interrogatory No. 10(a);
>
> (c) The methodology NAMT utilized to compute the figure identified in response to Interrogatory No. 10(a);
>
> (d) All facts supporting or relating to the figure identified in response to Interrogatory No. 10(a);
>
> (e) All documents supporting or relating to NAMT's allegation that BSE is "indebted to NAMT in the amount of $256,450.00;" and

MEMORANDUM IN SUPPORT OF BERING SEA ECCOTECH INC.'S
MOTION FOR PARTIAL SUMMARY JUDGMENT
AGAINST NORTH AMERICAN MARINE TRANSPORTATION LLC
NAMT v. BSE, Case No. 3:06-CV-00110 TMB
Page 7 of 18
P-JL DEFS MEMO SUP MTN PTL SJ 083007 981380008

(f) The name, address, and telephone number of each person NAMT believes has knowledge of how the figure identified in response to Interrogatory No. 10(a) was computed.

ANSWER:

a) Upon review of the documents produced in discovery, NAMT revises its demand to $133,800 calculated as follows:

1. May 15, 2007 (date of delivery) to May 21, 2007 (date of failure of Coast Guard Inspection arranged by BSE) - 6 days at $11,150 per day = $66,900.

2. May 22, 2007 - Under Article 12, NAMT had 24 hours to resolve the issues identified in the failed Coast Guard inspection before the vessel went offhire - 1 day at $11,150 per day = $11,150

3. June 3 and June 4, 2005: The vessel passed its inspection on June 3 2004 and passengers came aboard on June 4 - 2 days at $11,150 per day = $22,300.

4. June 5, 2007 to July 2, 2007 - NAMT miscalculated when it invoiced BSE from June 5 to June 20.  The invoice should have been for 16 days but was only for 15 days.  BSE invoiced its client, Gallagher for 16 days, and it was 16 days.  NAMT is owed for one additional day = 1 day at $11,150 per day = $11,150.

5. July 3, 2007 to July 5, 2007 - The FREEBIRD was available for use by Charterer in Dutch Harbor and was used as a Hotel Boat in Dutch Harbor despite being unavailable at the job site and, therefore, BSE owes charter hire for this time frame.  BSE paid one day of Charter Hire and NAMT is asking for an additional two Although the charter hire should be reduced by some amount BSE has not produced information to determine actual damages (as opposed to consequential damages barred by the Contract). NAMT, therefore, is requesting full charter hire = 2 days at $11,150 per day = $22,300.

b) See section a) above.

c) See section a) above.

d) See section a) above.

MEMORANDUM IN SUPPORT OF BERING SEA ECCOTECH INC.'S
MOTION FOR PARTIAL SUMMARY JUDGMENT
AGAINST NORTH AMERICAN MARINE TRANSPORTATION LLC
NAMT v. BSE, Case No. 3:06-CV-00110 TMB
Page 8 of 18
P-JL DEFS MEMO SUP MTN PTL SJ 083007 981380008

Case 3:06-cv-00110-TMB   Document 23   Filed 08/31/2007   Page 9 of 18

    e) The log book, correspondence between the Coast Guard and Kevin Kennedy, and the correspondence between William Arternburn and Howard Hile.

    f) Lloyd Hargett
    Lester Boudreaux

7. BSE's Interrogatory Nos. 11, 12 and 14 to NAMT, and NAMT's Answer to Interrogatory Nos. 11, 12 and 14 read as follows:

    INTERROGATORY NO. 11: After May 15, 2005, when do you contend that the USCG first inspected the vessel *Freebird* to determine whether the USCG would issue a permit to operate the vessel?

    ANSWER:

    May 21, 2007.

    INTERROGATORY N0.12: Did the USCG issue a permit to operate the vessel *Freebird* on the date identified in your response to Interrogatory No. 11.  If not, what was your understanding of why the USCG did not issue a permit to operate the vessel *Freebird* on the date identified in your response to Interrogatory No. 11.

    ANSWER:

    No. One of the housing units on board the FREEBIRD was deemed unacceptable and there was an issue with oil in the bilges.

    INTERROGATORY NO. 14: Do you contend that the USCG ever certified the vessel *Freebird* for 30 personnel. If yes, please identify and provide any and all documentation in your possession, custody and control which confirms that the USCG certified the vessel *Freebird* for 30 personnel.

    ANSWER:

    Yes. On June 6, 2006, the Coast Guard issued a certificate Amendment which certified the FREEBIRD for 30 persons.

Lukjanowicz Affidavit, Paragraph 3, Exhibit 2.

MOTION FOR PARTIAL SUMMARY JUDGMENT
AGAINST NORTH AMERICAN MARINE TRANSPORTATION LLC
NAMT v. BSE, Case No. 3:06-CV-00110 TMB
Page 9 of 18
P-JL DEFS MEMO SUP MTN PTL SJ 083007 981380008

III. ISSUE PRESENTED

BSE believes that the issue presented for review to the Court in BSE's Motion for Partial Summary Judgment can be summarized as follows: Under the Agreement, did BSE become obligated to commence paying NAMT the per diem charter party rate of $11,150 on May 15, 2005, the date when NAMT delivered the *Freebird* to Dutch Harbor but before NAMT actually obtained required USCG Certificate of Inspection documentation for 30 personnel to be aboard the *Freebird*, or did BSE become obligated to commence paying NAMT the per diem charter party rate of $11,150 commencing on June 6, 2005, the date on which NAMT admits that it actually obtained required USCG Certificate of Inspection documentation for 30 personnel to be aboard the *Freebird*. NAMT argues for the former position, while BSE advances the latter. BSE submits, however, that the position for which it advocates is supported by the Agreement while the position NAMT advances is not, primarily for two reasons.

First, BSE's position harmonizes all parts of the BSE/NAMT Agreement, while NAMT's position would "write out" of the Agreement portions of both Article 3 and the Confirmation of Hire part of the Agreement. Second, carrying NAMT's position to its logical extreme, NAMT would have this Court sanction a result which would require BSE to pay NAMT for $11,150 per day for each and every day the *Freebird* moored in Dutch Harbor instead of serving as a floating hotel for clean-up workers

MEMORANDUM IN SUPPORT OF BERING SEA ECCOTECH INC.'S
MOTION FOR PARTIAL SUMMARY JUDGMENT
AGAINST NORTH AMERICAN MARINE TRANSPORTATION LLC
NAMT v. BSE, Case No. 3:06-CV-00110 TMB
Page 10 of 18
P-JL DEFS MEMO SUP MTN PTL SJ 083007 981380008

near the spill site. In other words, the position NAMT advances before this Court is that, under the parties' Agreement, if NAMT never took steps to obtain required USCG Certificate of Inspection documentation for the 80 day period of time between May 15, 2005 and August 3, 2005, while the *Freebird* sat at anchor in Dutch Harbor, BSE would nevertheless be required to pay NAMT a total of $892,000 for this 80 day period.

NAMT has apparently recognized the folly of such a position, albeit belatedly. NAMT has reduced the amount of its claim to eliminate the per diem charter party rate of $11,150 for all days between May 23, 2005 and June 2, 2005, the period of time during which NAMT was attempting to obtain required USCG Certificate of Inspection documentation for 30 personnel to be aboard the *Freebird*. NAMT's actions thus implicitly confirm that the position it seeks to advance is neither valid nor in accordance with the parties' Agreement.

We explore these points in greater detail below.

IV.   LEGAL ARGUMENT

**A.   Summary Judgment Standards.**

Rule 56(c) of the Federal Rules of Civil Procedure instructs that a motion for summary judgment shall be "rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there are no genuine issue as to

MEMORANDUM IN SUPPORT OF BERING SEA ECCOTECH INC.'S
MOTION FOR PARTIAL SUMMARY JUDGMENT
AGAINST NORTH AMERICAN MARINE TRANSPORTATION LLC
NAMT v. BSE, Case No. 3:06-CV-00110 TMB
Page 11 of 18
P-JL DEFS MEMO SUP MTN PTL SJ 083007 981380008

any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Federal summary judgment procedure requires the piercing through the pleadings and their adroit craftsmanship to reach the substance of the claim. *See, e.g., Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Where the record taken as a whole could not lead a rational trier of fact to find for the non moving party, then there is no genuine issue for trial. *See id.* Accordingly, "an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56 (e). The foregoing standard of review applies when the Court interprets a maritime contract under its admiralty jurisdiction. *See Certain Underwriters at Lloyds, London v. Inlet Fisheries, Inc.*, 389 F. Supp. 2d 1145, 1150 (D. Alaska 2005).

**B.   Interpretation of Maritime Contracts.**

Courts interpret and resolve disputes concerning maritime contracts, such as the Agreement in this case, according to federal law. *See Norfolk Southern Railway Co. v. Kirby*, 543 U.S. 14, 23, 125 S.Ct. 385, 160 L. Ed. 2d 283 (2004) (stating that "[w]hen a contract is a maritime one and the dispute is not inherently local, federal law controls the contract

MEMORANDUM IN SUPPORT OF BERING SEA ECCOTECH INC.'S
MOTION FOR PARTIAL SUMMARY JUDGMENT
AGAINST NORTH AMERICAN MARINE TRANSPORTATION LLC
NAMT v. BSE, Case No. 3:06-CV-00110 TMB
Page 12 of 18
P-JL DEFS MEMO SUP MTN PTL SJ 083007 981380008

interpretation.")  Since the Agreement is clearly a maritime contract, "familiar principles of contract interpretation govern its construction."  *Yang Ming Marine Transport Corp. v. Okamoto Freighters, Ltd.*, 259 F.3d 1086, 1092 (9th Cir. 2001).

The overall goal the Court must seek in interpreting the Agreement is to effectuate the intentions and understandings of the parties to the Agreement.  *Id.* at 296.  The most obvious place for the Court to discern the intentions of BSE and NAMT is to examine the language of the Agreement.  *Id.*  In other words, the Court should first consider the language found in the Agreement, and give the terms found in the Agreement their ordinary meaning.  *Id.* at 1092.

**C.   Applying the Foregoing Principles of Contract Interpretation to the Language Found in the Agreement Reveals that BSE had no Obligation to Pay NAMT the Daily Charter Rate of $11,150 per Day Unless and Until NAMT Provided a Vessel to BSE Certified by the USCG for 30 Personnel.**

NAMT apparently believes that once it delivered the *M/V Freebird* to Dutch Harbor on May 15, 2005, BSE became liable to pay NAMT $11,150 per day, regardless of whether the *Freebird* had and maintained valid Certificate of Inspection documentation as required by the USCG for 30 personnel.

In advancing its "payment of $11,150 per day commencing upon delivery of the *Freebird* to Dutch Harbor" argument, NAMT fails to give meaning to every part of the Agreement.  In fact, NAMT's "payment commencing upon delivery of the *Freebird* to

MEMORANDUM IN SUPPORT OF BERING SEA ECCOTECH INC.'S
MOTION FOR PARTIAL SUMMARY JUDGMENT
AGAINST NORTH AMERICAN MARINE TRANSPORTATION LLC
NAMT v. BSE, Case No. 3:06-CV-00110 TMB
Page 13 of 18
P-JL DEFS MEMO SUP MTN PTL SJ 083007 981380008

Dutch Harbor" argument would give no meaning, but would instead annul, the Confirmation of Hire portion, as well as portions of Article 3, of the Agreement.

Reading the Agreement as a whole, it is clear that NAMT intended to provide, and BSE expected to receive, a vessel which had and maintained, in the language of Article 3 of the Agreement, "valid Certificate of Inspection documentation as required by the United States Coast Guard . . ." The Confirmation of Hire portion of the Agreement further defined the "valid Certificate of Inspection documentation . . . as required by the United States Coast Guard" that NAMT intended to provide, and BSE expected to receive, under the Agreement. NAMT intended to provide, and BSE expected to receive, required Coast Guard Certificate of Inspection documentation for 30 personnel to be aboard the *M/V Freebird*.

Reading the Agreement as a whole, therefore, as it must, the Court will be required to conclude that BSE's obligation to commence paying the daily charter rate of $11,150 per day for use of the *Freebird* commenced only when NAMT provided to BSE required Coast Guard Certificate of Inspection documentation for 30 personnel to be aboard the *Freebird*. It was only at that point in time that the intentions of NAMT and BSE, as expressed in the entire Agreement, became effective.

By NAMT's own admission, it was not until June 6, 2006 [sic 2005] that the Coast Guard issued a Certificate Amendment

MEMORANDUM IN SUPPORT OF BERING SEA ECCOTECH INC.'S
MOTION FOR PARTIAL SUMMARY JUDGMENT
AGAINST NORTH AMERICAN MARINE TRANSPORTATION LLC
NAMT v. BSE, Case No. 3:06-CV-00110 TMB
Page 14 of 18
P-JL DEFS MEMO SUP MTN PTL SJ 083007 981380008

1  which certified the *Freebird* for 30 persons." Despite this
2  admission, NAMT inconsistently argues that BSE nevertheless is
3  obligated to pay NAMT the daily charter rate of $11,150 for
4  nine specific days of charter hire ($100,350) prior to June 6,
5  2005! NAMT seeks damages of $100,350 involving the following
6  three distinct time periods:

- May 15 to May 21, 2005 (6 days or $66,900)
- May 22, 2005 (1 day or $11,150)
- June 3-4, 2005 (2 days or $22,300)

NAMT cannot have it both ways. It cannot rely upon the Agreement to require BSE to pay it the daily charter rate of $11,150 per day from and after June 6, 2005 when NAMT was finally able to provide required Coast guard Certificate of Inspection documentation for 30 personnel to be aboard the M/V *Freebird*, while at the same time attempt to rely upon the Agreement to sustain a daily charter rate of $11,150 per day prior to June 6, 2005, when NAMT could not provide required Coast Guard Certificate of Inspection documentation for 30 personnel to be aboard the *M/V Freebird*.

In this case, the intention of the parties is clear and unambiguous under the Agreement and therefore may be determined by the Court as a matter of law. NAMT was to deliver the *Freebird* to Dutch Harbor on May 15, 2005. But, BSE did not have to pay BSE the daily charter rate of $11,150 per day for any days during which NAMT was not able to provide BSE with

MEMORANDUM IN SUPPORT OF BERING SEA ECCOTECH INC.'S
MOTION FOR PARTIAL SUMMARY JUDGMENT
AGAINST NORTH AMERICAN MARINE TRANSPORTATION LLC
NAMT v. BSE, Case No. 3:06-CV-00110 TMB
Page 15 of 18
P-JL DEFS MEMO SUP MTN PTL SJ 083007 981380008

required Coast Guard Certificate of Inspection documentation for 30 personnel to be aboard the *M/V Freebird*.

NAMT implicitly recognizes that this was the intention of the parties under the entire Agreement. When BSE recently reduced its claim for damages for BSE's alleged breach of contract from $256,450 to $133,800, it abandoned any claim for damages from May 23, 2005 through June 2, 2005. During this period of time, NAMT attempted to fix one of the housing units on board the *Freebird*, as well as fix a problem with oil in the bilges. The Coast Guard had advised NAMT that at least these two items precluded the Coast Guard from providing NAMT with the Certificate of Inspection documentation which the Agreement required. Although late, NAMT's interpretation of its responsibilities under the Agreement from May 23, 2005 through June 2, 2005 should apply with equal force to the following three time periods:

- May 15 to May 21, 2005 (6 days or $66,900)
- May 22, 2005 (1 day or $11,150)
- June 3-4, 2005 (2 days or $22,300)

## V.   CONCLUSION

The Court should effectuate the intentions and understandings of NAMT and BSE as set forth in the language of the entire Agreement. When the Court does so, it should find that NAMT expected to provide, and BSE expected to receive, required USCG Coast Guard Certification of Inspection

MEMORANDUM IN SUPPORT OF BERING SEA ECCOTECH INC.'S
MOTION FOR PARTIAL SUMMARY JUDGMENT
AGAINST NORTH AMERICAN MARINE TRANSPORTATION LLC
NAMT v. BSE, Case No. 3:06-CV-00110 TMB
Page 16 of 18
P-JL DEFS MEMO SUP MTN PTL SJ 083007 981380008

documentation for 30 personnel to be aboard the *M/V Freebird* before BSE became obligated to pay NAMT the daily charter rate of $11,150 per day.

By its own admission, NAMT was not able to provide BSE with required Coast Guard Certificate of Inspection documentation until June 6, 2005, which became the start date for BSE to commence paying NAMT the daily charter rate of $11,150 per day.

The Court should grant BSE partial Summary Judgment for the nine days prior to June 6, 2005 for which NAMT seeks payment at the daily charter rate of $11,150 ($100,350 total) and should issue an order dismissing, with prejudice, $100,350 of NAMT's remaining damage claim of $133,800.

Dated:   August 31, 2007.    OLES MORRISON RINKER & BAKER LLP
                             Attorneys for Bering Sea
                             Eccotech, Inc.


                             By:  /s/John Lukjanowicz
                               John Lukjanowicz, ASBA 9411133
                               Jonathan A. DeMella
                             701 Pike Street, Suite 1700
                             Seattle, Washington  98101-3930
                             Phone:  (206) 623-3427
                             Fax:    (206) 682-6234

MEMORANDUM IN SUPPORT OF BERING SEA ECCOTECH INC.'S
MOTION FOR PARTIAL SUMMARY JUDGMENT
AGAINST NORTH AMERICAN MARINE TRANSPORTATION LLC
NAMT v. BSE, Case No. 3:06-CV-00110 TMB
Page 17 of 18
P-JL DEFS MEMO SUP MTN PTL SJ 083007 981380008

CERTIFICATE OF SERVICE

I hereby certify that on this 31st day of August, 2007, a true and correct copy of the foregoing was served

Electronically on:

Donald K. McLean
dkmclean@bmjlaw.com
Bauer Moynihan & Johnson LLP
2101 Fourth Avenue, Suite 2400
Seattle, WA  98121


OLES MORRISON RINKER & BAKER LLP


By:   /s/John Lukjanowicz


MEMORANDUM IN SUPPORT OF BERING SEA ECCOTECH INC.'S
MOTION FOR PARTIAL SUMMARY JUDGMENT
AGAINST NORTH AMERICAN MARINE TRANSPORTATION LLC
NAMT v. BSE, Case No. 3:06-CV-00110 TMB
Page 18 of 18
P-JL DEFS MEMO SUP MTN PTL SJ 083007 981380008