## BLANKET TIME CHARTER AGREEMENT

THIS AGREEMENT made and entered into as of 29TH day of APRIL, 2005 by and between NORTH AMERICAN MARINE TRANSPORTATION LLC_____.("OWNER"), herein represented by its duly authorized corporate officer, and , ("CHARTERER"), BERING SEA ECCOTECH, Inc. herein represented by its undersigned authorized corporate officer.

### WITNESSETH,

WHEREAS, CHARTERER has a need, from time to time, to engage marine vessels for use and assistance in its activities and desires to time charter vessels from OWNER; and

WHEREAS, OWNER owns various vessels suitably equipped for CHARTERER's activities, together with the personnel and facilities necessary and capable of rendering such marine service;

NOW, THEREFORE, the parties hereto enter into this Agreement, under the terms of which OWNER shall hire to CHARTERER and CHARTERER shall hire from OWNER, vessels as may from time to time be requested by CHARTERER, and if said vessel(s) is (are) chartered, said vessel(s) shall be subject to all terms and provisions of this Agreement. The agreement of the parties to the charter of a specific vessel under the terms of this Agreement shall be confirmed in writing in a "Confirmation of Hire", a form of which is attached hereto.

### Article 1 - Term and Termination

This Agreement shall remain in full force and effect until canceled by either party upon the giving of thirty (30) days prior written notice to the other, provided however, that any unexpired charter of any specific vessel shall continue in effect to be subject to the terms and conditions hereof until expiration of the term as specified in the written Confirmation of Hire.

### Article 2 - Charter

This Agreement does not obligate OWNER to charter its vessels to CHARTERER, nor does it obligate CHARTERER to hire any vessel or vessels owned by OWNER, but it, together with the Confirmation of Hire on the specific vessel(s), shall govern the respective rights and duties of OWNER and CHARTERER.

### Article 3 - Delivery and Vessel Condition

Vessel shall be delivered to CHARTERER at the time and place specified in the Confirmation of Hire. OWNER shall exercise due diligence to deliver and maintain the vessel in good running order and in a seaworthy condition. The vessel shall have and maintain valid Certificate of Inspection documentation as required by the United States Coast Guard, and shall maintain its classification with the American Bureau of Shipping. The crew shall at all times be licensed in accordance with U.S. Coast Guard and American Bureau of Shipping requirements.

Unless otherwise noted in the Confirmation of Hire, CHARTERER shall pay OWNER within FIFTEEN 15 days of invoice for all DAY RATE, fuel, lubricants and water, ENGINE ROOM CONSUMABLES, onboard the vessel at the time of the delivery. OWNER shall pay CHARTERER within FIFTEEN 15 days of invoice for all fuel, lubricants and water onboard the vessel at the time of redelivery. Quantities of fuel, lubricants and water shall be determined by either on and off-charter surveys or by vessel gauge measurements. The prices for said fuel, lubricants and water shall be the prevailing prices at the respective ports of delivery and redelivery.

*[signature]* 5-2-05

FINAL COPY - FREEBIRD CHARTER

EXHIBIT 1
Page 1 of 8 Pages

### Article 4 - Charter Hire

OWNER shall bill CHARTERER for each vessel EVERY FIFTEEN 15 DAYS of each month at the address specified in the Confirmation of Hire, or such other address as CHARTERER may from time to time designate in writing. CHARTERER shall pay OWNER within FIFTEEN 15 days after the date of OWNER's invoice. Payment shall be made in U.S. Dollars to OWNER at the address specified in the Confirmation of Hire.

In the event of any dispute regarding any invoice, the undisputed portion of said invoice shall be paid and only the disputed portion shall remain unpaid pending the resolution of the dispute. If any vessel is lost, payment shall be made up to and including the date of the loss. If the time of loss is uncertain, then hire shall be payable up to and including the day such vessel was last heard from.

### Article 5 - Use of Vessel

CHARTERER agrees to restrict the use of each vessel solely to its intended duty as a hotel vessel and related support for oil spill clean up personnel and to the lawful movement of its supplies, equipment and other materials and personnel incidental to its operations in inland and offshore waters. The whole of the vessel shall be at CHARTERER's disposal reserving proper and sufficient space for the vessel's master, officers, crew, tackle, apparel, furniture, equipment, stores and fuel.

The master of each vessel shall determine whether operations requested by the CHARTERER can safely be undertaken and whether his vessel is capable of undertaking or being employed to carry out the directions and orders of the CHARTERER. The master, although appointed by the OWNER, shall be under the general directions of the CHARTERER as regards employment of the vessel, agencies, or other arrangements, and shall not unreasonably refuse any request to undertake operations or carry out any order or direction specified by CHARTERER. From time to time, CHARTERER shall furnish the master of the vessel with all requisite instructions and sailing directions, and the master shall be made available within a reasonable time upon request of CHARTERER.

Notwithstanding anything to the contrary in this Agreement, it is agreed that if any operation, voyage, movement, activity, or inactivity on the part of the vessel is insisted upon by CHARTERER, its agent, employees, or representatives and undertaken by the master of the vessel under written protest given to CHARTERER by master at the time the directions or instructions are received from the CHARTERER, on account of the opinion of the master that said operation, voyage, movement, activity, or inactivity is hazardous and likely to cause loss, damage or expense, or loss of life or personal injury, the responsibility for any such loss, damage or expense, or loss of life or personal injury shall thereupon rest solely with CHARTERER.

### Article 6 - Non-Crew Member Subsistence

CHARTERER agrees to pay for all subsistence, except during the mobilization and demobilization period.

### Article 7 - Duties of Master and Crew

OWNER shall provide and pay the master and crew of each vessel. The master shall prosecute the voyage with dispatch and shall render all reasonable assistance with the vessel's crew and equipment. The duties of the crew provided by the OWNER shall be limited to the maintenance and navigation of the vessel; assistance with the loading and discharging of bulk cargo laden aboard the vessel; deployment of the mooring system and anchors, and incidental operation of vessel cranes in support of CHARTERER's work as directed by CHARTERER's representatives. The master shall be entitled to direct the placement of cargo and supplies for the purpose of the stability and trim of the vessel. OWNER shall not be required under any circumstances to load or discharge, or supervise the loading or discharge of supplies or cargo except as expressly provided above.

EXHIBIT 1
Page 2 of 8 Pages

### Article 8 - Additional Equipment

CHARTERER may install additional equipment aboard each vessel reasonably necessary in connection with its operations, provided that CHARTERER shall obtain the written consent of OWNER before making any structural changes or modifications, and provided that said installation shall be approved by the American Bureau of Shipping and/or the United States Coast Guard, when applicable. All equipment installed by CHARTERER shall remain its property and shall be removed prior to redelivery, provided each vessel is restored to the same good order and condition as it was prior to the installation of equipment of structural change, all at CHARTERER's expense. The vessel shall remain on-hire at the rate set forth in the Confirmation of Hire during any period of said installation, removal and/or modifications.

### Article 9 - OWNER's Insurance

OWNER agrees at its sole cost and expense to procure and continuously maintain in full force and effect throughout the term of this Agreement, and with reliable insurance companies, the following insurance coverages:

a. Hull and Machinery insurance, including full collision liability, on all vessels provided by OWNER in the performance of this Agreement with limits equal to or greater than the fair market value of each vessel;

b. Protection and Indemnity insurance, including contractual liability coverage, crew coverage, wreck removal, collision liability (unless included in the coverage required in subparagraph (a)) and pollution and clean-up endorsement. The limits of liability of such insurance shall not be less than $1,000,000 per occurrence.

c. Workers Compensation and Employers' Liability insurance, extended to include coverage pursuant to the Longshoreman's and Harbor Workers Act including the Outer Continental Shelf Act, for all employees of OWNER with per occurrence minimum limits of $1,000,000 for the Employer's Liability coverage.

d. Excess Protection and Indemnity Insurance, including collision and contractual liability coverage for the difference between the full value of the vessel and the sum of $5,000,000.

e. Excess Employer's Liability coverage with limits of $4,000,000.

All deductibles under the foregoing insurances shall be for the account of OWNER. All of the aforesaid policies shall name CHARTERER as an additional insured and shall waive subrogation against the CHARTERER. All policies shall also provide that CHARTERER receive not less than fifteen (15) days notice of material change or cancellation of the aforesaid coverages. Upon request by CHARTERER, OWNER shall secure and deliver to CHARTERER certificates of insurance, on forms as required by CHARTERER, evidencing that the foregoing insurance coverages are in full force and effect.

### Article 10 - Indemnity

OWNER shall protect, defend, indemnify and hold harmless CHARTERER, its client, their respective parent and/or affiliated companies and their respective employees, servants and agents against all losses, claims, damages, and suits for damage to property of OWNER, including the vessel, arising out of or incident to the operation of the vessel or the work to be performed under this Agreement.

CHARTERER shall protect, defend, indemnify and hold harmless OWNER, its respective parent and/or affiliated companies and their respective employees, servants and agents against all losses, claims, damages, and suits for damage or loss to the property and cargo of

*[signature] 5-2-05*

EXHIBIT 1
Page 3 of 8 Pages

CHARTERER, its customers, licensees and contractors arising out of or incident to the operation of the vessel or the work to be performed under this Agreement.

OWNER shall protect, defend, indemnify, and hold harmless CHARTERER, its client, their respective parent and/or affiliated companies and their respective employees, servants, and agents, against any and all claims, demands, liabilities and causes of action of every kind and character, arising directly or indirectly out of the management, operation and navigation of the vessel, including, but not limited to, loading and unloading of personnel, cargo or property aboard the vessel, in favor of any person and/or entity on account of personal injuries and/or death of OWNER's employees, OWNER's contractors or their employees, or OWNER's invitees.

CHARTERER shall protect, defend, indemnify, and hold harmless OWNER, its parent and/or affiliated companies and their respective employees, servants and agents, against any and all claims, demands, liabilities and causes of action of every kind and character, arising directly or indirectly out of the management, operation and navigation of the vessel, including, but not limited to, loading and unloading of personnel, cargo or property on the vessel, in favor of any person and/or entity on account of personal injuries and/or death of CHARTERER's employees, CHARTERER's other contractors (excluding OWNER hereunder) or their employees, or CHARTERER's invitees.

OWNER and CHARTERER intend and agree that the obligation in the four above paragraphs in this Article 10 means that the indemnifying party shall indemnify, hold harmless and defend, the indemnified party, without limit and without regard to the cause or causes thereof, including preexisting conditions, whether such conditions be patent or latent, the unseaworthiness of any vessel or vessels, breach of warranty (expressed or implied), strict liability, or the negligence of any person or persons, including that of the indemnified party, whether such negligence be sole, joint or concurrent, active, passive or gross.

OWNER and CHARTERER shall notify each other immediately of any personal injury, death, property or cargo claim, demand or suit that may be presented to them, affording each other the full opportunity of investigate any such incident.

### Article 11 - No Consequential Damages

Notwithstanding any provisions to the contrary herein, in no event shall either party be liable to the other for special, indirect, or consequential damages resulting or arising out of the performance of this Agreement or any breach or termination of this Agreement, however caused, including without limitation, delay damages, demurrage, loss of profit or business interruption.

### Article 12. - Off-Hire

Should the vessel, for reasons not caused by CHARTERER's negligence, break down, become inoperative or unavailable to CHARTERER (which shall not be deemed to include periods where either the vessel is standing by awaiting instructions from CHARTERER or repairs and maintenance can be performed without interfering with the operating requirements of CHARTERER) for more than twenty-four (24) cumulative hours in any one calendar month, payment of hire shall cease for all time in excess of said period until the vessel is again in a thoroughly efficient state to resume her service or is substituted by a suitable replacement vessel acceptable to CHARTERER at no cost to CHARTERER; and, if after seven days, there is no remedy provided, CHARTERER and OWNER mutually agree to terminate the contract.

### Article 13 - Liens

CHARTERER shall not create, incur, or permit any liens to be imposed upon any vessel chartered under this Agreement. CHARTERER agrees to indemnify and hold harmless OWNER of and from all liens created and imposed on the vessel (except such liens as might arise out of the obligations imposed herein by OWNER) as a result of CHARTERER'S operation.

*[signature]* 5-2-05

### Article 14 - Force Majeure

Neither OWNER, CHARTERER, the vessel, or their owners, operators, managers, or agents shall be liable for any loss, damage, or delay of whatsoever nature resulting from an act of God, Force Majeure, enemy, strikes, labor disputes, hostilities, war, epidemic, quarantine, embargo, or for any restraint of any government, rulers or people, or other causes beyond the control of the parties hereto. It is understood and agreed that unusual or inclement weather preventing the operation of the vessel, while the vessel is otherwise available for service, shall not interrupt the vessel's charter hire nor shall any event of Force Majeure excuse CHARTERER from paying charter hire already earned by and payable to OWNER.

### Article 15 - Assignment

Neither OWNER nor CHARTERER shall assign this Agreement without the prior written consent of the other, which consent shall not be unreasonably withheld. However, no such assignment shall relieve the assigning party from any of its obligations hereunder.

### Article 16 - Nature of Charter

Nothing herein contained shall be construed as creating a demise of the vessel to the CHARTERER, nor shall this Agreement apply to the bareboat charter of any barge or other vessel from OWNER by CHARTERER.

### Article 17 - Notices

The address of OWNER and CHARTERER for the sending of notices, invoices and payments shall be as set forth in the Confirmation of Hire or as may be subsequently designated by the OWNER or CHARTERER.

### Article 18 - Law

The Agreement shall be construed in accordance with the general maritime laws of the United States of America.

### Article 19 - Entire Agreement

This Agreement and the applicable Confirmation of Hire constitute the entire agreement between OWNER and CHARTERER. In the event there is a conflict between the provision hereof and any orders, papers, documents, conversations or understandings which may have been executed or passed between the parties in connection with the subject matter hereof, the provisions hereof shall be controlling unless modified by the parties in writing with express reference to the specific provision(s) of this agreement which are so modified. No provision of any delivery ticket, invoice or other instrument used by CHARTERER in setting forth the work performed hereunder shall modify or supersede the provisions of this Agreement.

### Article 20 - Headings

The preceding headings are for identification purposes only and are not intended to delineate the obligations or rights of the parties to this Agreement.

### Article 21 - Severability

The provisions of this Agreement are separate and severable. If any provision, item or application of this Agreement shall be deemed invalid in whole or in part, such invalidity shall not affect other provisions, items or applications of this Agreement which can be given effect without the invalid provision, item or application.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed by their



EXHIBIT 1
Page ___ of ___ Pages

duly authorized representatives, in duplicate originals, as of the day and year first above written.

NORTH AMERICAN MARINE TRANSPORTATION, LLC
(OWNER)

By: NORTH AMERICAN MARINE TRANSPORTATION LLC (owner
Name: LLOYD G. HARGETT

Name: _____
Title: SOLE MEMBER    4-25-05

CHARTER
By: BERING SEA ECCOTECH, INC.
Name: WILLIAM N ARTERBURN
Title: CEO

_____ 5-2-05

p.7   North American Marine Tra 3375530424   Apr 29 05 02:15p



EXHIBIT 1
Page 6 of 8 Pages

## CONFIRMATION OF HIRE

Pursuant to the terms of that certain Blanket Time Charter Agreement, dated APRIL 29, 2005 entered into by and between NORTH AMERICAN MARINE TRANSPORTATION, OWNER., and CHARTERER, BERING SEA ECCOTECH, Inc. hereby agrees to Time Charter and CHARTERER hereby agrees to hire the vessel subject to the following:

1. Vessel, Official No., Class: CERT FOR 30 PERSONNEL R/V FREEBIRD   #272162 USCG-OSV-ABS-LOADLINE
2. Vessel Description: 140X36X10
3. Date of Delivery: 05-15-2005
4. Port of Delivery: Dutch Harbor, Alaska
5. Port of Redelivery: ~~BALLARD OIL CO. DOCK, BALLARD,~~ Dutch Harbor
6. Area of Operation/Navigation Limits: PACIFIC OCEAN 200 MILES FROM LAND
7. Term of Charter: 80 DAYS
8. Daily Charter Rate: $11,150. US
9. Downtime Rate: N/A
10. Mobilization/Demobilization: $158,000 US (payable as $110,000 on mobilization and $58,000 on demobilization.)
11. Option to Extend: YES
12. CHARTERER AGREES TO PAY FOR FUEL, LUBE, WATER, ENGINE ROOM CONSUMABLES, provided proper receipts are provided.

(OWNER) NORTH AMERICAN MARINE TRANSPORTATION LLC.
LLOYD G. HARGETT
SOLE MEMBER
4-29-05

BERING SEA ECCOTECH, Inc. (CHARTERER)
William L. Afterburn
Chief Executive Officer
4/29/05

R.H. 5-2-05


EXHIBIT 1
Page 7 of 8 Pages

AGREED and ACCEPTED this ~~25TH~~ 29th day of APRIL 2005

OWNER                                              CHARTERER

<u>NORTH AMERICAN MARINE TRANSPORTATION LLC.</u>

By: NORTH AMERICAN MARINE TRANSPORTATION LLC.

Name: LLOYD G. HARGETT

Title: SOLE MEMBER

[signature] 4-25-05                                                    Title

CHARTERER

BERING SEA/ECOTECH Inc

By: [signature]

Name: WILLIAM N. AFTERBURN
4/29/05

[signature] RHH 5-2-05

EXHIBIT 1
Page 8 of 8 Pages